**FILED IN**
**4th COURT OF APPEALS**
**SAN ANTONIO, TX**
*3:30 pm, Nov 04, 2015*
**KEITH E. HOTTLE**
**CLERK OF THE COURT**

REPORTER'S RECORD
VOLUME 1 OF 1
TRIAL COURT CAUSE NO. 2014-CI-15954


JOHN SHULL                          ) IN   THE   DISTRICT   COURT
                                    )
               Plaintiff(s),        )
                                    )
VS.                                 ) BEXAR     COUNTY,    TEXAS
                                    )
WESTOVER CROSSING (SA)              )
HOMEOWNERS ASSOCIATION INC.,        )
SPECTRUM MANAGEMENT, LLP,           )
AND ATTORNEY BUCK (DEVIN)           )
BENSON                              )
                                    )
               Defendant(s).  ) 285TH JUDICIAL   DISTRICT


                    **********************************
                         HEARING OCTOBER 5, 2015
                    **********************************




               On the 5TH day of OCTOBER, 2015 the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Karen Pozza, Judge of the 407th District Court of Bexar County, Texas:

               Proceedings reported by Machine Shorthand.






                    TRACY RAY PLUMMER - OFFICIAL COURT REPORTER
                    407TH DISTRICT COURT (210) 335-2895

A P P E A R A N C E S

MR. JOHN SHULL
APPEARING PRO SE


MR. BRIAN D. HENSLEY
APPEARING FOR WESTOVER CROSSING HOA, INC.
SPECTRUM ASSOC. MGMT.


MR. SCOTT NOEL
APPEARING FOR DEVIN "BUCK" BENSON

INDEX

                                                         PAGE

CAPTION ------------------------------------------ 1

APPEARANCES -------------------------------------- 2

INDEX -------------------------------------------- 3

PROCEEDINGS -------------------------------------- 4

REPORTER'S CERTIFICATE --------------------------- 46

THE COURT: 2014-CI-15954, Shull versus Westover. We have a summary judgment this morning -- three summary judgments?

MR. NOEL: Good morning, Your Honor.

THE COURT: And a motion for continuance, again, I think?

MR. SHULL: Yes, Your Honor. I have a motion for discovery continuance.

THE COURT: Okay. You can go ahead with that motion first.

MR. SHULL: Your Honor, in the last hearing you had reviewed some of the documents and so forth. That was in my first thing for discovery continuance. And I stressed the fact that there was an existing order from Judge Michael Mery that basically said that once the inspection of the records have been done under discovery, then the summary judgment is considered. You ruled, and I asked for 30 days, and I believe you gave me 17 days to today. And I'm not sure in the hearing if there was a condition on the discovery aspect, but the other parties have not provided any additional information since that. And the information that I'm requesting are records that have been required by the Property Code to be retained, and contained in those records are records that are essential for my

ability to defend against the summary judgment. For instance, the account records. The Defendant Homeowner's Association has come up with some records in their exhibit for -- of a filing on 28 August, which was not contained in their database that they had previously -- that they had furnished to me. So what we have is we have contradictory records that have been produced, we have a significant amount of records that haven't been produced yet. None of this delay is caused by me, because my request has been very clear from the very beginning, as to what I needed. Their summary judgment is basically -- one of them has to deal with whether attorney Benson was involved or not. The attorney/client privilege has been invoked. There are records, however, that should still be available to me, and those are financial obligations that show up on the budget line. Those have not been produced. So therefore, basically the records are non-auditable, is the way they were provided to me. Secondly, the Homeowner's Association has put a, what I claim as a fraudulent lien on my property. Well, that requires certain things by law to be accomplished. None of those documents that are required by law have been provided to me. Certified notices of the existence of the lien, for instance, have never been produced. I believe in all

fairness that since this delay has not been incumbent upon anything I've done or not done, that this Court will grant a continuance until the Defendant meets the requirement of the order to give me the documents that I've requested and are provided for by law. That way I can have the ability to properly defend myself against the summary judgments that are now being presented to this Court.

I've included in my pleading is an Exhibit 2, which basically says that the Defendant Homeowner's Association admits, and has indicated that they wouldn't admit this in Court, that the records have not been provided to me in total, as requested. Again, I stress these records are mandated by law, so they should have been in existence a long time ago. But for some reason, they are not there. And that's the crux of my case. My case is against all these Defendants, for mismanagement, for unauditable actions, and the fraudulent lien is just one example of that. And so the case before you is the operation and conduct of daily affairs by all the Defendants. Defendant Benson is involved, because he had a contract. It obligated him to do certain things. That contract was limited to just certain duties. Attorney Benson -- Defendant Benson, however, did duties outside the scope of his contract.

Those documents that I'm asking to be produced should illustrate or substantiate that. I'm at a significant disadvantage when I'm not given records that are required by law to be retained; therefore, I ask that this Court extend the period of discovery until the client -- I mean until the Defendant, whose records I'm seeking, certifies to this Court that all the records have been provided. Now, that serves two purposes. If he certifies that, then that means he's got to live with what he's given us -- given me, the Court and so forth, so that in future pleadings he can't come up with another document. This has happened in the past.

There are also questions on the documents that he's provided to date, in the sense that they are nonsecurable, they are duplicable, with different dates. There are records that conflict with each other and so forth. That's why these records are imperative for both this Court and myself to properly proceed. And therefore, I request that the Court grant a continuance to allow me to receive these records, so that I can incorporate them in my defense, which is the purpose of discovery.

THE COURT: Thank you.

MR. SHULL: Thank you.

MR. NOEL: Good morning, Your Honor.

THE COURT: Good morning.

MR. NOEL: Scott Noel here with Plunkett & Griesenbeck, on behalf of Defendant attorney Buck Benson. If the Court will recall, although I imagine she's heard a few things since then, on September 17, Mr. Shull, we were all here in your courtroom that morning. Mr. Shull presented another motion to -- a previous motion to extend discovery on the morning we filed our previous motion for summary judgment settings. Mr. Shull has done that again here this morning. So he filed this motion to extend discovery period, knowing full well that this Court back on September 17 said I'm resetting this till October 5, with no further extensions granted. So now Mr. Shull stands here before you in defiance of your order, and files another motion for continuance.

THE COURT: Well, just mostly understood if there are in fact outstanding discovery requests or not?

MR. NOEL: This is the first we heard of it, Your Honor, with this.

THE COURT: Well, there's been discovery pending for some time. I just want to -- assurance that everything has been provided. That's the only question.

MR. NOEL: And on behalf of Mr. Benson,

we can make that representation to the Court.

MR. NOEL: Your Honor, Brian Hensley on behalf of Westover Crossing HOA, as well as Spectrum. This discovery dispute dates back to the spring, and there was a hearing based on a motion to compel filed by Mr. Shull before Judge Mery, in May of this year. Prior to that hearing, myself and Mr. Shull reached an agreement, as it related to discovery requests he had, to my client. That agreement, Your Honor, was that the HOA would make available to Mr. Shull the books and records of the Homeowner's Association, excluding attorney/client privilege information and accounting information of other members of the association. That's exactly what we have done. Mr. Shull has subsequently come back and complained that he believes things are missing. We've asked him to identify specifically what he believes is missing. As far as I know, it is not this motion either. He is not put pen to paper on that. But what I can represent this Court is, is that we produced all the books and records, saving those two exceptions, we've been able to identify on behalf of the association. And those are made available to Mr. Shull in August. There was a supplemental production made in September 14th, I believe it was. We've had, since the last hearing when the Court reset us for today, my

associate and I had another very lengthy conversation with Mr. Shull discussing discovery matters, among one, and again we represented to Mr. Shull that we do not have any other documents to produce. We are not aware of any other production to be made available. That's where we stand, Your Honor.

THE COURT: Thank you.

MR. NOEL: May I add one other thing, Your Honor? Is that his motion to extend does not comply with the continuance requirements of 251 and 252. One, it's not verified; two, it is deficient, what it seeks and how that might be impactful today. And he also set his motion for summary judgment today, which would he have filed his motion for partial summary judgment, there is a statement with affirmative support with his signature on it, that says he didn't need any discovery to even prove his case for fraudulent lien. So here we are again, Your Honor, we're rehashing something, he is trying to look behind Judge Mery's order, Judge Mery entered an order September 16 denying his motion to compel. So now he is trying to go behind Judge Mery's ruling just a few weeks ago, your ruling from the date following the 17th, and stand before this Court saying, he doesn't have -- he doesn't have the records. Well, he is specific, and therefore, he is

wasting a lot of time.

MR. SHULL: Your Honor?

THE COURT: Anything else on the continuance?

MR. SHULL: Yes, Your Honor. On that hearing he is referring to, Judge Mery did not even consider the order. He actually told me to do it otherwise, because he said procedurally, I have not met the requirement to confer with the two other Defendants, so therefore, he wouldn't consider the motion to compel. And that's why it was denied. I have the Court hearings here, if you would like the transcript, it shows that. The other thing is the Defendant Homeowner's Association has said that I have not identified records. He is the one that proposed to the Court that they would give me all the records, per the Property Code, with the exception of the attorney/client exemption. They have not done this. I have attached an e-mail which specifies what those records are, and that's part of what they call the Records Retention Policy of the Code, which they have to comply with anyway. So if he is basically admitting to the Court that if those records are not available, then basically they violated the Property Code, which is the crux of this case. This case is about mismanagment. What is happening is they

are putting the responsibility on me, the Plaintiff, to make sure that they've done what they are supposed to do. All I'm asking that the discovery go through. He did also decline to make a statement to the effect that he just gave the Court, that you know, that the records were complete. He told me that basically he would come to the Court and tell them that the discovery process was still going on, that they were still looking for things. And so acting on that, I went ahead and I put this continuance in. As far as the Plaintiff's and the other Defendant's note on my summary judgment pleading, that was a procedural thing that I put it on, but this statement that I didn't have enough and didn't do this and didn't do that, that's something that may have happened almost a year ago. I filed that petition, I believe, nine months ago, and basically I have not done anything with that pleading for summary -- partial summary judgment, and I do emphasize the word partial, Your Honor, because partial means it is dealing with only part of the lawsuit before you. The summary judgments that are being presented to you are allegedly against the entire lawsuit, and limit themselves to the fraudulent lien. Bottom line, Your Honor, I need that discovery, I believe I'm provided for that by law, and regardless of what happened before, we have still

outstanding documents that are mandated by law, which will provide me documents to defend myself properly against the summary judgments that they now seek.

THE COURT: Okay. The motion for continuance is denied. So we have three summary judgments, or two pending?

MR. NOEL: We have three, Your Honor. We have the Plaintiff's partial motion for summary judgment to support his alleged fraudulent lien. We have, on behalf of Mr. Benson, a no evidence and traditional summary judgment on all of the cause of actions asserted to Mr. Benson.

MR. HENSLEY: And on behalf of Westover Crossing HOA, as well as Spectrum Association Management, we have both a traditional and no evidence summary judgment, addressing all of Mr. Shull's claims.

THE COURT: Okay. So in your arguments it is most useful to me if you just point out in particular what case law you think I should study or what parts of your motion are, you know, salient, and I will read through all of it and study the case law and give you a ruling probably no later than tomorrow, for sure the absolute latest I would give it to you is Monday of next week. So also, if you have draft orders to leave with the Court, that's helpful, as well. So if

you just briefly let -- point me to what you want me to look at, then I will be happy to take it under advisement. So let's see, who wants to go first?

MR. NOEL: I will be happy to start, Your Honor.

THE COURT: Okay. Yes, sir?

MR. NOEL: So on behalf of Mr. Benson, --

THE REPORTER: Sir, could you move the microphone closer to you?

MR. NOEL: On behalf of Mr. Benson, Your Honor, this is a traditional and no evidence motion for summary judgment. We also have asserted objections and we have proposed orders, and so the Court can go through and review the objections, --

THE COURT: Okay.

MR. NOEL: -- the evidence that's attached, in response to Mr. Shull.

THE COURT: Do you have draft orders for all of that that you are going to leave with the Court?

MR. NOEL: Yes, Your Honor, I do.

THE COURT: Thank you.

MR. NOEL: So the crux of the case against Mr. Benson filed by Mr. Shull, is that somehow Mr. Benson participated in drafting a fraudulent lien that Mr. Shull claims was filed against his property in

2014, within the -- He filed his second amended petition just within the last -- within the last week on September 28th, claiming that there is a 2009 lien, also, Your Honor, that was apparently fraudulently prepared by Mr. Benson. But it was subsequently released in 2010, and satisfied. And so Your Honor, our motion for summary judgment, our first amended motion for summary judgment applies to both of those liens. So what is the most important part of this, Your Honor, there is no evidence before this Court that Mr. Benson at all participated in drafting, preparing or filing the summary judgment. And in fact, Exhibit C to our motion for summary judgment is the invoice from a firm Holt and Young, out of Houston that actually prepared the --

THE COURT: Okay. And I can review your motions and pleadings online, but it is actually quite difficult. We don't have really a great system. So if you happen to have extra copies to leave with the Court, that would be very helpful.

MR. NOEL: I do, Your Honor. May I approach?

THE COURT: Yes. Thank you, thank you.

MR. NOEL: So Your Honor, tab one is our motion for summary judgment, and towards the end of it -- and I'm happy to flip through it -- I got an extra

slip copy of the actual invoice itself, but Holt and Young, a firm out of Houston, actually prepared -- May I approach, Your Honor?

THE COURT: Yes, sir. Thank you.

MR. NOEL: And here is an extra copy for Mr. Shull, as well.

THE COURT: Thank you.

MR. NOEL: The affidavit of Holt and -- The invoice from Holt and Young clearly indicates that it prepared the lien on behalf of Westover. And then it proceeded to cause to have that filed. The liability of Mr. Shull seeks to impose upon Mr. Benson, is based on five different causes of action. One is fraudulent lien; two, breach of fiduciary duty; three, constructive fraud; four, common law fraud, and five, civil conspiracy to file a fraudulent lien. As they indicated, Your Honor, there is no evidence to indicate to support Mr. Shull's claim that Mr. Benson at all prepared that lien. And in fact, that invoice has been in Mr. Shull's possession for quite sometime. And that dovetails into our motion for sanctions that I will get into in just a moment.

The causes of action against Mr. Benson are wholly without merit, baseless. Mr. Shull knew at the time that he filed this suit, Mr. Benson didn't

participate in the drafting of the lien. He had discussions with Mr. Benson's partner, Elliott Cappuccio, in which Mr. Benson -- excuse me, sorry, Mr. Shull, acknowledged that he was willing to nonsuit this case, provided Mr. Benson sign an order confessing that the lien was fraudulent. He used this litigation for improper purpose. So then Mr. Benson was forced to retain our law offices to defend him in this case. And there's been voluminous activity, and we are coupled with our motion for summary judgment and motion for sanctions. We provided the Court a supplemental affidavit of those fees to date, total well over $55,000 in fees and expenses. And normally, Your Honor, these motions for sanctions wouldn't be warranted; however, this case is fairly unique. The -- Mr. Shull knew back, right after he filed this suit, that he didn't have a claim against Mr. Benson. And but for Mr. Benson not agreeing to a statement acknowledging that the lien was fraudulent, Mr. Shull was agreeing to nonsuit Mr. Benson well before he even retained our office. So he knew back then he is maintaining this suit for improper purpose. Again this summer, we sent an offer over to Mr. Shull, asking him to dismiss the suit, and these are attached to our copies of our motions for sanctions, indicating our willingness to -- if he would drop the

suit, that that would be a full release of all the parties. Again he refused. He has sent e-mails to us saying treat me as an equal, treat me as an equal, I earned it. But Your Honor, it is now we are here before the Court, and it is time for Mr. Shull to be held accountable for his actions.

The Texas Supreme Court earlier this summer issued an opinion Canty Hanger versus Bird (phonetic). I've got an extra copy for the Court, if you would like --

THE COURT: Yes, sir. Thank you.

MR. NOEL: And it's cited. And this case is important, Your Honor, from a couple of regards, because it speaks to an attorney's duty to a nonparty. Mr. Shull alleged that there is some sort of duty or breach of fiduciary duty between Mr. Benson and himself, and it is simply not true. There is no duty between an attorney and a nonparty, whether that's in a transactional matter or litigation matter. And so this did not rise to a litigation matter until the adversary proceeding was filed, but it was adversarial during the course of the dealings between Mr. Benson, who is representing Westover HOA, against Mr. Shull. And as the Court clearly points out, there is no duty owed and if Mr. Shull wanted to go seek representation, he could

do so. And, in fact, he did, Your Honor, but for some reason he either fired his counsel or his counsel fired him. We don't know specific, but he is here today pro se, Your Honor. So and just because Mr. Shull wants to try and characterize Mr. Benson's actions as being fraudulent in some sort of regard, doesn't take it outside the attorney's role. Mr. Benson's skill, expertise and professionalism is what he used in representing the HOA. And in this case, Your Honor, the very act Mr. Shull complains about, Mr. Benson didn't even do. It was Holt and Young that prepared the lien. So it is our position, Your Honor, that this entire case is baseless and without merit. He's used this for improper purpose to try to get an advantage over the HOA, and so we would ask, Your Honor, one, that the Court grant our motion for no evidence summary judgment, and traditional summary judgment, and two, issue sanctions in the amount of $55,000 against Mr. Shull, because of his frivolous pursuit of an action against Mr. Benson.

THE COURT: Yes, sir, Mr. Shull?

MR. SHULL: Your Honor, as we know, the standard for review of the summary judgment is the nonmovant's evidence are true, indulges every reasonable inference in favor of the nonmovant, and resolves all

doubts in favor of the nonmilitant. That's Providence Life and First Union cases. I have that quoted on page four of my responsive pleading. Basically what has happened, Your Honor, is I sued both attorney Benson and the Homeowner's Association for mismanagement and problems with accounts and everything else, plus fraudulent lien. Now there exists, and this is already in proof in the Court record, a contract between the firm that attorney Benson works for, and the Homeowner's Association, it is the exclusive and sole contract that has been provided under discovery to date, that relies -- that covers the period in which these two liens were issued against my property. It says in that contract that basically for a fee of $250, Mr. Benson's -- attorney Benson's firm would execute liens in favor of the homeowner's association. They had the authority and this was confirmed in the 11 May transcript of the hearing for discovery before Judge Mery, that he was the sole guy, attorney Benson was the person, that handled liens. He was asked under discovery if he knew about liens, he said no. But then he turned right around and said that Mr. Shull, i.e., was not treated properly in discovery. All this I have in my pleading, responsive pleading. His contract limits attorney Benson to lien actions. Attorney

Benson got involved in a lot -- several other significant issues, one of which is on records accessibility. Records were requested for liens as far back as a year ago, and on four occasions, both the HOA and I believe twice by attorney Benson, denied the existence of any type of liens against my property. This is verified here, two enclosures that I have that I've inserted into the Court, before showing the discovery responses that were given prior to the initiation of this suit. This suit was sued because of the fact that things were happening and they weren't doing anything about. So therefore, records were one of the things outside his contractual scope. The other thing that was outside his contractual scope was that he apparently, I was told now, and they basically challenged my affidavit, but basically he attended annual meetings, and as a result he was also -- certain problems were brought to his attention. One was stalking charges by the Board President, against me, both in a public hearing and a private hearing. He actually had telephonic conversations during that meeting, discussing this. So in other words, he got involved in actions way beyond the scope of his attorney/client relationship, per a contract; therefore, he has no privilege. He also, therefore, can't claim

that he was representing the HOA because he didn't have a mandate to do so. As we know, a contract is a limitation. So that's in reference to his contract. Now, getting down to the lien portion, we know that he had the responsibility and the authority per contract. We know he had the opportunity because he was there and he was the guy. We know that, and, in fact, in the court transcript, the Court asks, the sole contract that governs the relationship between the parties, attorney Griesenbeck answered, that's my understanding, he, being attorney Benson. The other defendant's response in discovery was the fact that Pullen -- Cappuccio, Pullen and Benson agreed to provide legal services in condition -- connection with the general state court collection and litigation matters involving property owner assessments and liens against real property, in and around San Antonio, Texas. There is nothing else. That's it. That's what he was limited to do. The records will show that he dealt with record production in violation of the covenants of the Homeowner's Association, that it was in violation of the Property Code. He then went on to say, Mr. Benson in the record under an affidavit, that I have never had any meeting or discussion with the plaintiff outside my duties as legal representative for Westover. Again, the legal

representation is limited to his contract. On the fraudulent lien, like I said, he had both the responsibility and the accountability. He also had the motive, and he was also -- they mandated by inference, to be in charge of knowing what was going on in all lien processes. These are liens that were put in 2009, that they never acknowledged existed until I brought it to their attention in May of last year. The lien for the May 2013 lien, was put in right during the middle of negotiations between attorney Benson and my attorney. There are letters on file that show that there is correspondence going on, which is definitely a bad faith act. I mean, the obligation for which the lien was originated, not only was illegal on its face, because it violated the Property Code, but attorney Benson allowed and apparently had the approval, final approval authority, to put all liens against property to have the lien placed while he was talking to my attorney, that debt for which that -- excuse me, that lien originated, was later indicated --

THE COURT: Can you get Mr. Shull some water, please?

MR. SHULL: There was no debt -- there was no obligation for which the lien could have been issued. It was resolved, it was zeroed out. That's --

And he was responsible for that. Then on top of that he was responsible for the records of this. And there is correspondence and e-mail from the Homeowner's Association, saying that Mr. Benson was the one that we go to for records management.

So now he comes to this court and he says wait a minute, I got proof that I didn't do anything. His only proof is his affidavit, and you and I both know that affidavits are self serving and are questionable, so that really doesn't mean too much. So now he comes up with an invoice, which was explained in court, has nothing to do with the lien itself. All it says is that somebody prepared the lien. Now, interestingly enough, you will notice on that document, Your Honor, that it is for $60 for nine liens. That's less than $7.00 a piece. According to his own contract, they charge 250. This is why that discovery was so essential that I needed to attain those financial records. Anyway, this is from a lawfirm in Houston, as he said, has no relationship to anybody here, does not specifically state who did what. They don't even know who Jennifer Nut (phonetic) was, who was the clerk -- I mean, the person that went down and docketed in the court. So what you have here is nobody knows what happened, but nobody was responsible. Now, I'm sure this lien didn't create itself, and I'm

sure that if attorney Benson did not actually sign the lien or actually present it in court, which is not what I'm saying, telling this Court, I'm telling this Court that he had a sole responsibility for all liens, whether he did it or somebody else did it, and he was accountable. I mean, if you are the driver of the car, you are responsible for the passenger and everybody else. If you crash, just because maybe your passenger caused the accident, the driver doesn't get off. The person that is designated by contract is responsible, and he had the authority to approve and disapprove. On top of this, the records that showed that this happened are mysteriously missing. Now, there are records for instance on the minutes of the HOA Board, which are supposed to indicate the violations that are being considered for lien processing. Where are they? In other words, these are documents that were supposed to have been produced by discovery, and are mandated not just because Mr. Shull is making it up, they are mandated so that they can audit what they did and why they did it. So I guess, Your Honor, it boils down to the fact that attorney Benson comes here and says, well, I don't have anything to do with this, because I say so. And here is an invoice that says, yep. Well, Your Honor, the rules for summary judgments say that the

nonmovant should be given deference. I'm the only one that's got evidence in front of this Court that's directly related to the charge that's being made. He doesn't have anything directly related. I mean, I come up with a telephone directory. An interesting thing about Holt and Young is they also have a website which basically talks about how you are supposed to process fraudulent liens, and it dictates some of the things that they haven't done. I'm sorry, Your Honor, I don't have a copy to present to the Court on that one, though. He also was -- Well, now going -- that's on the summary judgment thing. I'm the only one that has evidence, before the Court. Secondly, on the sanctions, the Defendant Benson has implied that he's had to do an awful lot of work here and he's offered me a nonsuit thing. I believe the Court record is extremely clear. In March of this year, we had what we call a declaratory judgment session, where I asked the Court to basically rule as fact, that their attorney Cappuccio had misled me and told me that the Rules of Procedure of nonsuit could not be included in a motion to the Court. And I then presented a page extract of O'Connor and sent it to him, and said that that's wrong, that's false. What I was asking him to do is basically say that if I nonsuited this attorney, that therefore, I just wanted

him to say that whatever he did was on direction of the Homeowner's Association, whether it was the lien or others, but in this particular case I may have used the word lien, fraudulent lien, to which he said no, he can't do that. And procedurally, and the question was on procedures, so therefore, I went to the Court and asked Judge Saldana to please just rule that basically this attorney did this.

Now, at the same time in that declaratory judgment, there were two original petition responses that were on record, so there were two attorneys representing attorney Benson, simultaneously. So I asked the Court to make a declaration of which one it is. Well, she ruled against me on the thing, but ultimately that's what happened, because the client, the defendant, resolved that. That's the reason for that hearing. The next hearing that we had, significant hearing, was a motion to compel, because I had sent out discovery to them and they had not responded. The Court mandated time for response had passed, and we were later to be called at the 11 May hearing. The reason why that happened, Your Honor, is because they had failed to post it on the calendar board. So they gave me some responses. Those responses where basically saying that we can't give you anything, we deny everything. And so

the Court ordered that they redo the responses, especially on the admissions and production; so they did. And contained in my pleading is the results of that, in which attorney Benson at the same time says he has no knowledge of anything, basically states that the Plaintiff has been mistreated, that there had been misconduct on the board, and that the governing documents were not made available. Now, this is all stated in the summary judgment response that I have docketed, the second one that you have. So I guess the bottom line, Your Honor, is as far as the summary judgment -- I mean, as far as the sanctions are concerned, all the delays, the costs of the hearings on the discovery and so forth, have been brought about by the Defendant's blatant ignoring Court rules and procedures and protocol, in good faith. I'm not sitting here and prolonging this thing, and I also would ask the Defendant earlier in the game to please provide me with some cost information, and that I would do so -- I would also do the same, because I would like to know what my exposure was as this case proceeded, not because I was setting up the predicate that I was going to lose. But I was just curious what my liabilities were. I even said that there was -- I believe there is a Federal law that I believe has been violated. They did not respond.

In fact, the first time I knew about the cost of this litigation, was on the 17th of September, when in fact they revealed to me that their insurance policy had been paid out, that attorney Benson had to do this and had to do that and so forth. My intention is not to bankrupt -- cost him a lot of money or anything else. My intention is to get attention given to the conduct that this case represents, what they did on the lien, what they did on the meetings, what they did on the records, what they did in the whole thing. Now, this is all pleaded out in my petition, with details and so forth. So he comes here and that's when I basically said, yeah, I will agree to a nonsuit, I don't want this to continue, and they said well, we spent too much money now. So that was -- I said, well, I had to make a conscious decision at that point I think it was $45,000 on the 17th of September. And they make me a settlement offer of 35,000, if I pay, 11,000, I believe it was every quarter, three quarters. And I basically said well, look, if I'm going to have to pay that much, I might as well go ahead and fight, because your cost of this Court has been brought on more not by my lawsuit, but your actions to date, in frustrating the discovery. And when we first started this -- this case, on that declaratory judgment hearing that I talked about in

March, they brought five attorneys, at least this is how they identified themselves to the court hearing. And they told me, Mr. Shull, you are going to pay for all of this, so you better nonsuit. And I'm saying, wait a minute, we haven't even had a hearing yet and I'm not exactly sure why you have all these people here, but no, I don't agree. They are correct in the record, they have offered me nonsuit three times. First time in the declaratory hearing, second time was -- I believe it was the 3rd of September, when they sent me something asking me to basically nonsuit. And then when I started learning the value of this, as I didn't know what the costs were involved until the 17th of September, when I knew the enormity of the situation, that's when I agreed. Your Honor, when they asked me on the 3rd of September about the nonsuit, we already had the motions docketed for the 17th, the summary judgments and so forth. So I just figured, well, nonsuit, they were already on the docket, so we'll go take care of those and then I will settle, if there is a settlement available. So that's as far as the sanctions are concerned. Again, a lot of their costs are related not to the attorney's contract, with the Homeowner's Association. They are related to everything he did outside said of that scope, and everything he did

outside of that scope. And everything he did outside of that scope, he was exposed. He had no attorney/client privilege. And since this involves a fraudulent lien, even more so that's what we call the crime fraud exemption, again in my pleadings I detail that, but that crime fraud exemption breaks that attorney/client privilege vale. The law defines the process of this lien as being fraudulent, because certain things weren't done. They weren't done. So therefore, that's fraud. Therefore, the vale is broken by the crime fraud exemption. And it should have been, but apparently I have not been able to properly present that, I guess, to the Court to get them to agree. So therefore all the attorney records, billings and so forth, have been denied me. So I guess in the bottom of my argument, Your Honor, they come here with a summary judgment with no evidence. I'm the only one that's got evidence before the Court, other than their affidavit, and that receipt, which doesn't even apply. And, in fact, I think they should be sanctioned for frivolous wasting of time on stuff like this. So therefore, I'm the only movant before, that basically has the justification for the summary judgment. I've got a contract that says he is supposed to do it, I've got the opportunity to do it, I've got the authority to do it, I've got the fact that

he took action to hide the records if it wasn't done. So therefore, the summary judgment should be denied. And the sanctions, as I explained, are all more result of their inaction or misaction, or conduct aspects of both the discovery process and the initial orientation of the lawsuit, and therefore, should be denied, and I should be granted sanctions for the -- and the Court, for the time that was wasted and eaten up in doing this kind type of frivolous gamesmanship.

THE COURT: Thank you. Mr Hensley, your brief comments about what I should study with regard to your motion?

MR. HENSLEY: Yes, Your Honor. May I approach?

THE COURT: Yes, thank you.

MR. HENSLEY: As the Court directed, it is just a courtesy copy of our motion, along with two proposed orders.

THE COURT: Great, thank you.

MR. SHULL: I'm sorry, Your Honor, weren't we considering the summary judgment against the attorney Benson?

THE COURT: Yeah. And I'm finished with that, and now I'm moving onto their summary -- Yeah.

MR. SHULL: Oh, I'm sorry. Excuse me.

MR. HENSLEY: Your Honor, we too, and when I say "we," the Homeowner's Association, as well as Spectrum Association Management, have also filed a motion for summary judgment, both traditional and no evidence. As it relates to the claims against my clients, there are seven causes of action filed by Mr. Shull. There is a violation of Section 12.002 of the Civil Practice and Remedies Code, fraudulent lien statute. There is a negligence claim, there is a common law fraud claim, and a civil conspiracy claim. Each of those causes of action, Your Honor, requires a finding that a notice of assessment lien filed against Mr. Shull's rental property was fraudulent. I believe our motion, and I'm not going to get into the details of it, being cognizant of the Court's time, it's pretty well spelled out in our motion, the summary judgment evidence establishes that not only has Mr. Shull not have evidence establishing that as a fraudulent lien that was filed, but in fact it was a valid lien that was filed against his property. And what the Court will see is that Mr. Shull for whatever reason, failed to pay a series of assessment liens against his rental property, and overtime that failure to pay accrued interest and late fees, all allowed by the Declaration of Restrictive Covenants, governing this association and Mr. Shull's

property. Mr. Shull's attorney, former attorney I should say, in correspondence with defendant, Mr. Benson, acknowledged that his client failed to pay assessments, past due assessments. The Court will see multiple notices of past due amounts, attached as summary judgment evidence. The Court -- I would ask the Court to take notice on those account statements that were sent to Mr. Shull. He's complained that we didn't provide it to the right address. The address on those account statements was the identical one to the plea, to the address he has listed on his pleadings in this lawsuit. Mr. Shull, himself, in communications to Mr. Benson, acknowledged his failure to pay past due assessments. His argument -- I'm interpreting his argument to be that he disputed some amounts owed and that was his basis for not paying the assessments that he did say was owed. We cited the provisions in the BCCR, Your Honor, which state very clearly that even if the amounts owed are in dispute, the member has an obligation to pay those amounts. There was absolutely nothing wrong with the filing of the notice of assessment made against Mr. Shull's property. Furthermore, more recently Mr. Shull has complained about a 2009 notice of assessment against his property. We assert that the statute of limitations have long

since passed on any cause of action related to that. That 2009 lien, I believe, the one that he complained was in August of 2009 and Mr. Shull didn't assert a cause of action till this year -- I'm sorry, okay -- that's right, the lien was actually filed in August of 2009, there was a satisfaction lien filed February 1st 2010. Mr. Shull didn't file his cause of action related to that until, at the earliest, August of this year, but more than likely, September of this year. I will correct myself the -- it was the 3rd of August 2009, when that lien was filed. Your Honor, the other three causes of action Mr. Shull has against my clients are breach of fiduciary duty, a breach of good faith of fair dealing, which is essentially the same thing as above, as well as a constructive fraud claim. We submit to the Court that each of those claims require a finding that the Defendants, my clients, breached a fiduciary duty to Mr. Shull. Again, as outlined, more ably in our written motion, is our assertion that the Homeowner's Association, as well as the property management company, owed Mr. Shull no fiduciary duties; therefore, there were no fiduciary duties that should have been breached. There is no formal relationship, and there is no special relationship created out of the contract, the DCCRs that created a fiduciary duty. We cited case law, Your

Honor, very similar instance on a case arising out of Third Court of Appeals in Austin, where it looked at whether fiduciary duty arose between ACC members, Architectural Control Committee members and members of an HOA, and the office of Court of Appeals found that there was no fiduciary relationship. We submit that the same exists in a context of a relationship between my clients and Mr. Shull. Absent a fiduciary duty, those three causes of action, the breach of fiduciary duty, breach of good faith and fair dealing, and constructive fraud claims, all fail as a matter of law, Your Honor. With that we will rest and allow the Court to make its decision, based on the papers submitted.

THE COURT: Thank you. Yes, sir?

MR. SHULL: I think that the Defendant is a little bit confused, so what I would like to do is maybe provide some clarification. The fraudulent lien thing for which the summary judgment is targeted are two liens, both of which were discovered after the lawsuit was initiated. Now, we well know it is an established principal of law, that the statute of limitations begins at the time of discovery, not at the time of occurrence. And I, in my pleading to Defendant Benson, I emphasized that I did not respond to this one on this -- this particular summary judgment, because I didn't realize he

had raised it. But the discovery for both those liens was after the lawsuit was initiated. They are well aware that both, when these liens were discovered, because when I discovered them, I brought it to their attention. And there is e-mail traffic, there is a attempt to get a judicial notice to getting incorporating my basic petition earlier this year, to which they objected, but I had asked them before I did, to see if that would be a proper way of doing it. So that was -- we have now two liens involved in this fraudulent lien. We have 9 August, 2009, and we have 3 May, 2013. Both of which the Defendants -- all the Defendants were present. We had the Westover Crossing and we had Spectrum Management. Both of these liens were denied that they existed on January 2014, as a result of a information request. In March 2014, they were denied again, as existing. And so now we find these liens and so we then go to the Property Code and find out what are these guys supposed to do. And if I may, I spelled those out in my briefing, but -- I mean, in my response, Your Honor, and I'd like to then go through those, if I may. And you have to remember the concept of clean hands, comes into play here. In other words, if they are involved in this and they haven't done things they were supposed to do, then they can't

use their noncompliance as an excuse for not doing something. What we have here is I attempted upon -- there are several things that happened with the lien. They have to have first the creation of an obligation. Now the Property Code says that that obligation has to be an assessment for dues owed to the Homeowner's Association. It cannot be an amount owed to a third party.

THE COURT: You need to stay near your microphone so the court reporter can get a clean record.

MR. SHULL: Oh, I'm sorry.

THE COURT: Thank you. I mean, you don't have to bend over, just don't wander away.

MR. SHULL: It has to -- They cannot put a lien for a third party obligation. Their account record will clearly show that when I started disputing things, it was $61.95 for a mowing charge, third party. That charge got them -- they got that charge up to additional charges and everything else to over $300. I think it was $395. Now, while this was happening, we were disputing that charge and the charges that were assessed with it. That's where the other attorney came in, attorney Chris and attorney Benson. So it was under negotiation. In other words, the debt hadn't been determined yet. Well, what happened was after these

negotiations, attorney Benson and the Homeowner's Association agreed that there was no obligation at all. Well, while this was happening and interestingly enough, right after the date of the letter that my attorney to attorney Benson is 31 May, the lien was put on the property two weeks before that, according to the County records. That meant that this was done intentionally, with I think malice. And the fact that nobody would identify it later, even made it worse. Well, okay, so now we have the problem with the source of the lien is wrong. Second thing is the Property Code says, and the reason why we have the Property Code provisions in 2009 and in 2013, is because of the fact that people were using these liens to encumber people illegitimately, illegally or fraudulently. And so therefore the Property Code mandated that if you are going to put a lien on the property, you have to send a certified mail. I emphasize, this is explicit in the regulations, in the Code, a certified notice to the party to which the lien is going to be placed. There is no and's, if's or but's, there is no alternatives, there is no this and no that. Well, the reason for is that because then the recipient is put on notice that he has certain other legal rights that he can exercise. He can exercise the collection policy of the Homeowner's Association, which

says that he is supposed to be offered certain ways to pay. That never happened. He's offered what we call an alternative resolution system. That never happened. Because there was no knowledge of the lien. I never knew there was a lien, so I couldn't avail myself for the remedies to solve it. That was the same thing that happened in August of 2009. They claim that their notice is because it is on our account statement. There was never any notice. Notice puts me on alert that I've got to do something. Now, that's okay. So now they have not only -- they created a lien, illegal lien. Now they ignored the requirements of the regulation. There has been, and as we know under discovery, up till now, there are no certified notices. Well, what happens next is that the Board requires under Robert's Rules of Order, that -- and their procedures, as they define, that the Board -- when they meet on special Board meetings or in the annual meetings, they discuss violations that are going to be processed for lien. This record doesn't exist for either of my liens. In fact, in half the minutes they don't have that information that they are supposed to have, so we don't know when the lien was proposed to be issued. All we know is when it was recorded. Okay. Well, that's -- so we'll continue on that. So the next thing you have is

allegedly that Board member, that minutes will show approval. Now, it has to go to be filed, it has to be prepared and filed. There are no records in that. They don't -- There is no financial records to backup anybody did anything. We have an attorney that's in charge of the liens, but I sure as heck -- he's had problems even determining what a job description was. Discovery, he says, I don't know. And so, you know, one thing leads to another, so now we got this morass of deliberately abusing lien authority. Now they say that the Plaintiff refuses to pay on the -- in August 2009, they have mysteriously out of nowhere. Now you have to remember, this discovery has been going on for almost a year now, two years prior to the initiation of the lawsuit, they come up with records on 2009 that show that apparently I was refusing to pay, and they have now told the Court that I used the excuse or I propose that there were mailing address differences. There were. What happened is they were mailing these things to my previous address, or my tenant was not forwarding to me. Regardless, I never got any certified notice at all. Now, the -- now that's the Property Code. The actual codes of the neighborhood association also require certified mail in two cases. They require certified mail on violations, what we call the ten day notice, and

that's the basis for -- one of the basis for a lien. The other one that they are required to do is the collection process and payment option. If in fact I owe money, they are supposed to give me a certified notice. Well, guess what, they have no records of making any of these notices, whether certified or not. Now, here we have a classic case of what I consider conscious indifference at best, which in fact constitutes fraud. So we now have these liens that have been recorded, and Mr. Shull doesn't know about them, and the course goes through until May of 2013, when in their objections, they objected to the wrong affidavit, but one of my tenants basically stated under oath that the reason why he would not buy the house is because that's why -- how he found the lien. He wanted to buy the house, so he went and checked the Court records and we found out that this lien existed. Now, if they were full of good faith and everything, you would think that the knowledge of this fraudulent lien would have been settled. I mean, there was no debt now. Guess what? The County records don't show any settlement of this latest lien. It's been in existence for almost a year and a half since they were told that the lien exists. Now, Your Honor, that to me is just gross bad faith. So the reason why the second lien was also incorporated is because I want

to show a pattern, a pattern of abuse, of ignoring the laws and the rules that apply. It is very clear. Property Codes, and I cited a case, that said it is mandatory a certified notice. It is not one of these things that, you know, you decide what you are going to do today or tomorrow. That's exactly how they treated the covenants, the violations on every other document -- declaratory document that they have on this Homeowner's Association. That's the purpose of this lawsuit. The lien is only indicative of what they've done or haven't done, to come here to this Court and say that I don't have anything to complain about. Your Honor, I have taken the extreme measure of doing everything prior to initiating this lawsuit, to resolve and answer my questions without avail. These Defendants have concerted together, because you can't do these things one or the other. They've done it collectively, individually and jointly, so therefore I'm requesting that you deny their summary judgment for the fraudulent lien to be thrown out, deny any sanctions that they may request, and issue an order in effect for the Plaintiff, who then has a partial summary judgment motion for the fraudulent lien.

THE COURT: Thank you, Mr. Shull do you have any new or different arguments with regards to your

motion for partial summary judgment?

MR. SHULL: No, Your Honor. I'm not sure how to handle that, but I would rather wait and see what your decision is, as to what I would do with my summary judgment.

THE COURT: Okay. Very good. So I want to make sure I have everybody's correct fax numbers. Mr. Shull, you're (210) 670-1418?

MR. SHULL: Yes, ma'am, but if it is possible, if you were going to try to communicate with me, could you do it with e-mail?

THE COURT: I'm going to fax my orders.

MR. SHULL: Because I don't have a full-time fax machine, that's the reason.

THE COURT: Okay. Then I will mail it to you. Mr. Hensley, 512-708-8777?

MR. HENSLEY: Correct, Your Honor.

THE COURT: And Mr. Noel (210) 734-0379?

MR. NOEL: Yes, ma'am.

THE COURT: Okay. I will fax the orders probably tomorrow morning. And Mr. Shull, I will fax yours, I'll also drop one in the mail for you as well.

MR. SHULL: I appreciate that.

MR. NOEL: Your Honor, may I approach with an order?

THE COURT: Yes, please. Thank you. Okay. Thank you all for your excellent arguments.

(Proceedings adjourned)

STATE OF TEXAS        )

COUNTY OF BEXAR       )

I, TRACY RAY PLUMMER, Official Court Reporter in and for the 407th District Court of Bexar County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

/s/Tracy Ray Plummer     CSR #3586
Expiration Date 12/31/15
Official Court Reporter, 407th District
Bexar County, Texas
100 Dolorosa Street
San Antonio, Texas  78205
(210) 335-2895